1
2
3
4
5
6
7

8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

MICHAEL HAMMITT, an individual,

11

Plaintiff,

vs.

12

13

LUMBER LIQUIDATORS, INC., a Delaware corporation; and DOES 1 through 10, inclusive,

14

15

Defendant.

CASE NO. 12cv1730-GPC(JMA)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

[Dkt. No. 58.]

16

17    Plaintiff Michael Hammitt ("Plaintiff") brings this action for damages against

18  Defendant Lumber Liquidators, Inc. ("Defendant" or "Lumber Liquidators") for denial

19  of overtime wages and meal breaks under California wage and hour laws, failure to

20  reimburse necessary business expenses, and unfair business practices. (Dkt. No. 1.)

21  Presently before the Court is Defendant's motion for summary judgment on all causes

22  of action alleged in Plaintiff's Complaint. (Dkt. No. 58.) The parties have fully briefed

23  the motion, (Dkt. Nos. 72, 87), and have filed requests for judicial notice in support of

24  their respective briefs. (Dkt. Nos. 61, 92.) The Court finds the matter suitable for

25  resolution without oral argument pursuant to Local Civil Rule 7.1(d)(1). Based on a

26  review of the briefs, supporting evidence, judicially noticeable facts, and the applicable

27  law, the Court GRANTS in part and DENIES in part Defendant Lumber Liquidators'

28  Motion for Summary Judgment. (Dkt. No. 58.)

# PROCEDURAL BACKGROUND

In September 2009, a putative class action complaint was filed against Lumber Liquidators in the United States District Court for the Northern District of California, titled <u>Chavez et al. v. Lumber Liquidators, Inc.</u>, No. CV-0904812(SC). (Dkt. No. 58-5, Meckley Decl. ¶ 4.) The <u>Chavez</u> action sought relief on behalf of Lumber Liquidators Store Managers and non-exempt employees in California on six causes of action: (1) Failure to pay overtimes wages; (2) Failure to provide meal breaks; (3) Failure to pay accrued vested vacation; (4) Failure to reimburse employees for necessary business expenditures; (5) Failure to provide itemized wage statements; and (6) Unfair business practices. (<u>Id.</u>; Dkt. No. 85-5, Meckley Decl. Ex. 3, <u>Chavez</u> action Second Amended Complaint.) On March 26, 2012, Judge Samuel Conti denied class certification in the Chavez action as to all claims except for the non-exempt employees' claim for failure to include commissions in the overtime calculation. (Meckley Decl. ¶ 5; Dkt. No. 92-1, Request for Judicial Notice Ex. 1.)

On July 12, 2012, Plaintiff Michael Hammitt filed an individual Complaint for damages against Defendant Lumber Liquidators in the above-captioned matter, alleging the following five causes of action: (1) Failure to pay overtime wages in violation of California Labor Code section 1194; (2) Failure to provide meal breaks in violation of California Labor Code section 226.7; (3) Failure to reimburse Plaintiff for expenses and losses incurred in the course of his employment in violation of California Labor Code section 2802; (4) Failure to maintain accurate payroll records in violation of California Labor Code section 226; and (5) Unfair, unlawful, and misleading business practices in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Dkt. No. 1.)

On January 17, 2014, Defendant Lumber Liquidators filed the present motion for summary judgment. (Dkt. No. 58.)

//

1

## FACTUAL BACKGROUND

2 **I.     The Parties**

3     **A.     Lumber Liquidators**

4     Lumber Liquidators is a Delaware company selling "flooring products,

5 including pre-finished and unfinished hardwood, laminate, and other flooring, as

6 well as glue, moldings, and cleaning kits, in retail stores throughout California,

7 including San Diego." (Dkt. No. 58-1 at 2.) Beginning on February 3, 2004, Lumber

8 Liquidators contracted with retail management company Anderson Lane Associates

9 ("ALA") to provide "labor and management services" related to the operation of

10 Lumber Liquidators' retail store located at 7930 Miramar in San Diego, California

11 ("Store 40"). (Dkt. No. 58-3 ¶ 3, Ex. 1.) On January 11, 2007, Lumber Liquidators

12 and ALA entered into a second Sales Agreement for the management of Store 40

13 ("2007 Sales Agreement"). (Id. ¶ 4, Ex. 2.) Under the terms of the 2007 Sales

14 Agreement, ALA was responsible for providing "[a]ll labor, management, personnel

15 and oversight required for the operation of the Stores including, among other things,

16 sales, deliveries, inventory and warehouse activities." (Id. Ex. 2 at ¶ 1(a)(I).) The

17 2007 Sales Agreement between Lumber Liquidators and ALA terminated on June 1,

18 2007. (Id. ¶ 5.)

19     **B.     Plaintiff Michael Hammitt**

20     In February 2006, Plaintiff Michael Hammitt responded to an ALA

21 advertisement for the "Assistant Store Manager" position in Lumber Liquidators'

22 Store 40. (Dkt. No. 58-6, Meckley Decl. Ex. 2, Hammitt Depo. at 44.) Richard Peck,

23 Chief Executive Officer of ALA, hired Plaintiff for the Assistant Store Manager

24 position. (Id. Ex. 3, Hammitt Depo. II at 24-25.) In August 2006, Store 40 Store

25 Manager Doug Chambers "went to work for another client of Anderson Lane," and

26 ALA promoted Plaintiff to the "Store Manager" position. (Id. at 32.)

27

28

On May 31, 2007,[1] Plaintiff submitted an employment application to Lumber Liquidators for the Store 40 Store Manager position and became a direct employee of Lumber Liquidators on June 1, 2007. (Dkt. No. 58-8, Davis Decl. ¶ 5.) Plaintiff testified he understood "ALA's contract had been bought out," and while "day-to-day operation" did not change, Plaintiff was transferred from ALA's payroll to Lumber Liquidators' payroll. (Dkt. No. 75, Garcia Decl. Ex. C, Hammitt Depo. at 92.)

## II.    Plaintiff's Employment at Lumber Liquidators

### A.    Plaintiff's Responsibilities

Plaintiff was employed by Lumber Liquidators in the Store Manager position at Store 40 until terminated on or about June 13, 2011. (Id.) It is undisputed that between June 1, 2007 and June 13, 2011, Lumber Liquidators classified Plaintiff as a salaried employee "exempt" from California wage and hour laws. During this time, it is undisputed that Plaintiff was the "highest ranking management employee" in Store 40, which is "a distinct and easily defined unit of [Defendant's] retail operations." (Dkt. No. 74 at 57.) Furthermore, the parties do not dispute that, at all times during his employment by Lumber Liquidators, Plaintiff "always supervised no fewer than two to four other employees" in the positions of Assistant Store Manager I, Assistant Store Manager II, or Warehouse Associate. (Id. at 59.)

### B.    Plaintiff's Compensation

Although Plaintiff's weekly workload changed over time, Plaintiff testified he regularly worked 70-80 hours per week at Store 40. (Dkt. No. 75-1, Garcia Decl. Ex. A, Hammitt Decl. ¶ 8.) While working as an Assistant Store Manager and Store

---

[1]Although the Declaration of James Davis submitted in support of Defendant's Motion for Summary Judgment states that Plaintiff submitted his application to Lumber Liquidators on May 31, 2006, this appears to be a typographical error. (Dkt. No. 58-8 5.) The preceding paragraphs in Davis' Declaration, (id. 3, 4), Defendant's motion, (Dkt. No. 58-1 at 3), and Plaintiff's deposition testimony, (Dkt. No. 58-6, Meckley Decl. Ex. 3, Hammitt Depo. at 91:4-23), indicate that Plaintiff's application was submitted to Lumber Liquidators on May 31, 2007.

[12cv1730-GPC(JMA)]

Manager, Plaintiff received a fixed base monthly salary as well as an additional payment that varied from month to month. The parties dispute whether the variable payment is properly classified as a "commission" or a "bonus."

**DISCUSSION**

## I.   Legal Standard

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. Celotex Corp., 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. Id. at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex, 477 U.S. at 324. If the non-moving party fails

1   to make a sufficient showing of an element of its case, the moving party is entitled

2   to judgment as a matter of law. Id. at 325. "Where the record taken as a whole could

3   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

4   issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

5   587 (1986). In making this determination, the court must "view[] the evidence in the

6   light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876

7   (9th Cir. 2001). The Court does not engage in credibility determinations, weighing

8   of evidence, or drawing of legitimate inferences from the facts; these functions are

9   for the trier of fact. Anderson, 477 U.S. at 255.

10  **II.    Analysis**

11          Defendant moves for summary judgment, arguing Plaintiff's "Store Manager"

12  position fell within both of two different exemptions to California's overtime and

13  meal break laws: the commissioned sales exemption and the executive exemption.

14  Defendant argues that because Hammitt was an "exempt" employee, Hammitt is not

15  entitled to recovery for overtime wages or meal breaks, and that his derivative

16  inaccurate wage statement claim also necessarily fails. Defendant also moves for

17  summary judgment on Plaintiff's "failure to reimburse" claim on the grounds that

18  Plaintiff knew about Lumber Liquidators' reimbursement policy but voluntarily

19  chose not to submit expense reimbursement reports because he did not think it

20  seemed worth the effort.

21          In addition, Defendant argues Lumber Liquidators should not be liable for

22  conduct prior to June 2007, because those claims are: 1) barred by the statute of

23  limitations; and 2) based on a "joint employer" theory of liability.

24          **A.    Withheld Overtime Pay**

25          Plaintiff's first cause of action seeks damages for Defendant's alleged failure

26  to pay overtime wages in violation of California Labor Code section 1194. Under

27  California law, employees must be compensated with overtime pay for any work in

28

[12cv1730-GPC(JMA)]

excess of eight hours per day or in excess of forty hours in one week. Cal. Lab. Code § 510. California Labor Code section 515 provides that the Industrial Welfare Commission ("IWC") may establish exemptions from section 510's overtime compensation requirement. Defendant argues Plaintiff was properly classified by Lumber Liquidators as a an "exempt" employee pursuant to the IWC's "commissioned sales" and "executive" overtime law exemptions. (Dkt. No. 58 at 1.)

### 1. Commission Sales Exemption

Section 3(D) of the IWC's Wage Order 4-2001 creates an exemption from the overtime requirements for employees paid through commission. This exemption provides that "[t]he [overtime] provisions of subsections (A), (B) and (C) above shall not apply to any employee whose earnings exceed one and one-half (1 ½) times the minimum wage if more than half of that employee's compensation represents commissions." IWC Wage Order 4-2001, 8 Cal. Code Regs. § 11040 3(D). Although the wage order does not define the term "commission," California Labor Code section 204.1 provides that "[c]ommission wages are compensation paid to any person for services rendered in the sale of such employer's property or services and based proportionately upon the amount or value thereof."[2] Accordingly, for a compensation scheme to be deemed to constitute "commission wages," two circumstances must apply: (1) the employees "must be involved principally in selling a product or service, not making the product or rendering the service"; and (2) the "amount of their compensation must be a percent of the price of the product or service." Keyes Motors, Inc. v. Div. of Labor Standards Enforcement, 197 Cal. App. 3d 557, 563 (1987).

---

[2] Although section 204.1 applies specifically to employees of vehicle dealers, the California Supreme Court has held that the statute's definition of "commission" is more generally applicable to other provisions of the Labor Code. Ramirez v. Yosemite Water Co. Inc., 20 Cal. 4th 785, 803-04 (1999) (citing Keyes Motors, Inc. v. Division of Labor Standards Enforcement, 197 Cal. App. 3d 557, 563 (1987)).

1    The parties do not dispute the amount of compensation received by Plaintiff

2  during this time period or the fact that Plaintiff's salary, at all relevant times,

3  exceeded one and one-half times the minimum wage in California. (Dkt. No. 74 at

4  ¶¶ 3-56.)[3] However, the parties dispute whether the variable portion of Plaintiff's

5  salary properly falls within the definition of "commission" under IWC Wage Order

6  4-2001, as defined by the court in <u>Key Motors</u>. (<u>Id.</u>)

7    Defendant argues Plaintiff's salary meets the first requirement of the <u>Keys</u>

8  <u>Motors</u> definition for "commission" wages because Plaintiff "did actually sell

9  products to customers," (Dkt. No. 58-1 at 10), and that Plaintiff's other duties were

10  "sales-related work" necessary for "selling a product or service." (Dkt. No. 87 at

11  4-6) (citing <u>Muldrow v. Surrex Solutions</u>, 208 Cal. App. 4th 1381, 1392 (2012)).

12  Plaintiff opposes, arguing sales were not his "primary duty" because he did not

13  "spend the majority of his time making sales and because his job duties consist[ed]

14  principally of manual labor." (Dkt. No. 72 at 22) (citing <u>Smalley v. Home Depot</u>

15  <u>U.S.A. Inc.</u>, No. 11-cv-02951-JCS, 2013 WL 1402348 (N.D. Cal. Apr. 5, 2013)).

16    Plaintiff's cited authority does not address the relevant standard. In <u>Smalley</u>,

17  the district court addressed the question of the proper characterization of the

18  plaintiff's "primary duty" for the purposes of applying the federal Fair Labor

19  Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1) and related exemptions, 29 U.S.C. §

20  213(a)(1). 2013 WL 1402348 at *7. Although other IWC wage orders expressly

21  incorporate federal FLSA regulations, <u>see, e.g.</u>, 8 Cal. Code Regs. §

22  11040(1)(A)(3)(e) (stating that the "learned or artistic profession" exemption is

23  "intended to be construed in accordance with" federal regulations concerning the

24

25

26    [3]Defendant has submitted evidence that Plaintiff's total salary was $48,284.25 from June 2007-December 2007; $90,393.85 in 2008; $98,734.55 in 2009, $111,220.48 in 2010, and $41,604.34 in 2011. (Dkt. No. 74 at ¶¶ 5-56.) These salary amounts included the following variable amounts per year above Plaintiff's base salary: $27,289.25 from June 2007-December 2007; $49,899.43 in 2008; $60,028.83 in 2009, $111,220.48 in 2010, and $24,911.96 in 2011. (<u>Id.</u>)

professional exemption to the FLSA), the Ninth Circuit has cast doubt on the relevance of FLSA provisions to the interpretation of the commission sales exemption under the California Labor Code. Peabody v. Time Warner Cable, Inc., 689 F.3d 1134, 1137 (9th Cir. 2012) ("It is . . . not clear whether courts may look to federal law under the FLSA to determine how commission payments should be allocated."); see also Martinez v. Combs, 49 Cal. 4th 35, 67 (2010) ("The IWC has on occasion deliberately incorporated federal law into its wage orders. However, where the IWC intended the FLSA to apply to wage orders, it has specifically so stated.") (citing Morillion v. Royal Packing Co., 22 Cal. 4th 575, 592 (2000)) (internal quotation marks omitted).

However, despite addressing the incorrect standard, Plaintiff nonetheless raises a triable issue of material fact as to whether Plaintiff was "principally involved" in selling a product or service as needed for the variable portion of Plaintiff's wages to constitute "commission" wages under Key Motors. In Muldrow v. Surrex Solutions, the California Court of Appeals found employees were "principally involved in selling" for the purposes of the commission sales exemption where the employees' "primary job duty was to recruit 'candidates' for employer 'clients.' " 208 Cal. App. 4th 1381, 1391 (2012). Although the employees argued their time spent "searching on the computer, searching for candidates on the website, cold calling, interviewing candidates, inputting data, and submitting resumes" should not be considered sales-related activities, the trial court and the court of appeals both found that the "whole point of those activities" were the "essential prerequisites necessary to accomplishing the sale." Id. at 1392 (internal quotation marks omitted).

Here, the parties raise conflicting evidence regarding Plaintiff's job duties during the relevant period. On one hand, Plaintiff testified the "biggest portion of [his] time" was spent on engaging with customers, including "dealing with

[12cv1730-GPC(JMA)]

customers as they [came] into the store or receiving phone calls from customers and talking about products." (Dkt. No. 585, Meckley Decl. Ex. 1, Hammitt Depo. at 244:11-23.) On the other hand, Lumber Liquidators Regional Manager James Davis testified "90-plus percent" of Plaintiff's time was dedicated to directing other employees "to complete certain job tasks or activities or duties."[4] (Dkt. No. 76-1, Garcia Decl. Ex. D, Davis Depo. at 149:21-150:19.) Furthermore, Plaintiff testified the number of hours he worked changed drastically over time due to changes in staffing and Lumber Liquidators' decision to open the store additional days per week. (Dkt. No. 585, Meckley Decl. Ex. 1, Hammitt Depo. at 236:13-238:1.) The Court may not weigh this conflicting testimony on summary judgment, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and thus finds Defendant has not met its burden of showing that Plaintiff was "involved principally in selling a product or service" as a matter of law. Accordingly, the Court DENIES Defendant's motion for summary judgment on Plaintiff's overtime claim due to the "Commission Sales Exemption" affirmative defense.

### 2. Executive Exemption

In addition, Defendant argues Plaintiff qualified for the "executive" exemption to California's wage and hour laws as a separate and independent ground for summary judgment on Plaintiff's overtime claim. (Dkt. No. 58-1 at 13.) Section 1(A) of the IWC's Wage Order 7-2001 exempts employers from the obligation to pay overtime to persons employed in the mercantile industry in "administrative, executive, or professional capacities." 8 Cal. Code Regs. § 11070(1)(A). Persons meeting the executive exemption are defined as:

> [A]ny employee: (a) Whose duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof; and (b) Who customarily and regularly directs the work of two or more other employees therein; and (c) Who has the authority to hire or fire other

---

[4]The Court notes that Plaintiff claims Davis also testified "Plaintiff spent less than 5% of his time interacting with customers." (Dkt. No. 74 ¶ 61) (citing Davis Depo. at 213:20-21:8). However, Plaintiff did not file the cited pages with the Court.

employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and (d) Who customarily and regularly exercises discretion and independent judgment; and (e) Who is primarily engaged in duties which meet the test of the exemption.

Id. § 11070(1)(A)(1)(a)-(e). The Wage Order defines "primarily" as "more than one-half the employee's work time." Id. § 11070(2)(K).

Defendant argues Plaintiff's deposition testimony demonstrates he spent more than half of his work time engaged in exempt duties. (Dkt. No. 58-1 at 17.) Specifically, Defendant claims Plaintiff worked an average of "62.5 hours" per week at Store 40, including the following breakdown: between 31 and 52 hours per week monitoring the store and engaging with customers; 2 hours reviewing company reports; 1 to 2 hours communicating with his regional manager; 10 to 12 hours reviewing inventory reports and inventory; 3 to 5 hours communicating with his employees; 2 to 3 hours dealing with customer complaints; 1 to 2 hours preparing freight bills; and 3 to 4 hours communicating with other stores. (Id.) Defendant claims Plaintiff spent "less than 25% of his time on nonexempt tasks, testifying that he spent 12 to 18 hours per week on nonexempt tasks, including 10 to 15 hours moving product and 2 to 3 hours on cleaning." (Id.)

Plaintiff argues Defendant has failed to meet its burden of proving the executive exemption affirmative defense because Plaintiff was not "primarily engaged" in managerial duties. (Dkt. No. 72 at 19-20) (citing Heyn v. Safeway Inc., 216 Cal. App. 4th 795, 821-22 (2013)). Plaintiff claims he "spent the majority of his time maintaining Defendant's stores, checking material into the warehouse, organizing product, operating the forklift, sweeping the shop, cleaning the rest rooms and windows, pricing and tagging merchandise, setting up displays, charging customers, and loading products onto vehicles." (Dkt. No. 72 at 19.)

As with the commission sales exemption, the Court finds that genuine issues of material fact exist as to how Plaintiff primarily spent his time. Again, the parties have introduced conflicting evidence regarding Plaintiff's primary job

responsibilities. In addition to the conflicting evidence discussed above, the parties introduced additional conflicting testimony regarding changes in Plaintiff's decision-making abilities before and after a personnel change in Plaintiff's direct supervisor. Specifically, Plaintiff testified that "Sam left the decision-making more open for the store managers; whereas Alan was - wanted to control it as to who was to be hired." (Dkt. No. 58-5, Meckley Decl. Ex. 1, Hammitt Depo. at 34:2-8.) As genuine issues of material fact exist as to how Plaintiff "primarily" spent his time as a Store Manager at Lumber Liquidators, the Court DENIES Defendant's motion for summary judgment on Plaintiff's overtime claim due to the "Executive Exemption" affirmative defense.

### B.   Meal Periods Claim

California law "obligates employers to afford their nonexempt employees meal periods and rest periods during the workday." Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1018 (2012) (citing Cal. Lab. Code §§ 226.7, 512; IWC Wage Order No. 5-2001, codified at 8 Cal. Code Regs. § 11050). The employer satisfies this obligation if "it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." Id. at 1040. As interpreted by the California Supreme Court, the statute and corresponding wage order do not require employers to "police meal breaks and ensure no work thereafter is performed;" "bona fide relief from duty and the relinquishing of control satisfies the employer's obligations." Id. at 1040-41.

Defendant's first argument for summary judgment on Plaintiff's second cause of action for failure to provide meal breaks in violation of California Labor Code section 226.7 is that the claim is "premised entirely on LLI's alleged misclassification [of Plaintiff] as exempt." (Dkt. No. 58-1 at 17.) As the Court denies summary judgment on Defendant's exemption affirmative defenses, the

[12cv1730-GPC(JMA)]

1  Court DENIES summary judgment on the ground that Plaintiff's meal period claims

2  are derivative of his misclassification claims.

3      Defendant's second argument for summary judgment on Plaintiff's meal

4  breaks claim is that Plaintiff was "provided" with 30-minute meal periods in

5  compliance with statutory requirements as a matter of law. (Dkt. No. 58-1 at 17-18)

6  (citing Cal. Labor Code § 226.7; Murphy v. Kenneth Cole Prods., Inc., 40 Cal. 4th

7  1094, 1101 (2007)). According to Defendant, premiums for missed meal breaks are

8  only owed by employers when the employers "know or reasonably should have

9  known" an employee was denied a meal break. (Id. at 18) (citing Brinker Rest.

10  Corp. v. Superior Court, 53 Cal. 4th 1004, 1040 (2012)). Defendant argues Plaintiff

11  was "provided" with uninterrupted meal breaks, but that Plaintiff voluntarily chose

12  to forgo meal breaks "so he could leave work earlier." (Id.) (citing Dkt. No. 58-5,

13  Meckley Decl. Ex. 2, Hammitt Depo. II at 148:11-18.)

14      Plaintiff responds that Defendant required him to work during meal periods

15  by repeatedly telling him that lunch breaks were not allowed and by establishing a

16  work culture that prohibited uninterrupted meal periods. (Dkt. No. 72 at 14-15)

17  (citing Butler v. Homeservices Lending, LLC, No. 11-cv-2313-L(MDD), 2013 WL

18  1285567 (S.D. Cal. Mar. 26, 2013) (Lorenz, J.)). In Butler, the court denied

19  cross-motions for summary judgment on the issue of whether the defendant

20  employer adequately provided the employee plaintiff with meal and rest periods in

21  compliance with California Labor Code and IWC Wage Order No. 5-2001. 2013

22  WL 1285567 at *8. The court found that the defendant's proffered meal and rest

23  break policy and testimony regarding the plaintiff's control over her own work

24  schedule created conflicting inferences raising a genuine issue of material fact with

25  the plaintiff's proffered testimony regarding her voluminous workload and inability

26  to take breaks. Id. at *7.

27      Here, the parties similarly present opposing evidence raising conflicting

28  inferences and a genuine issue of material fact regarding Plaintiff's claim for missed

[12cv1730-GPC(JMA)]

meal periods. Defendant points to Plaintiff's testimony that it was "his decision" to forgo meal periods because he "was already there 12 hours a day, [and] didn't really want to stay 12 and a half." (Dkt. No. 58-5, Meckley Decl. Ex. 2, Hammitt Depo. II at 148:11-18.) In addition, Defendant proffers the declarations of Lumber Liquidators Regional Managers James Davis and Alan Waters stating that they "never observed Plaintiff miss a meal break," and were never told by Plaintiff that he was either not provided with or could not take a 30-minute meal break. (Dkt. No. 58-7, Waters Decl. 8; Dkt. No. 58-8, Davis Decl. 21.) However, Plaintiff proffers conflicting deposition testimony stating he was never able to stop working for a 30-minute meal break, (Dkt. No. 75, Garcia Decl. Ex. C, Hammitt Depo. at 147:3-13), and was told by Lumber Liquidators Regional Manager Sam Sullivan to "[k]eep in mind we don't do breaks. We don't do lunch. . . Catch your lunch on the fly." (Id. at 219:14-18.) On a motion for summary judgment, the Court may not weigh this conflicting evidence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Butler, 2013 WL 1285567. Accordingly, the Court DENIES summary judgment on Plaintiff's second cause of action for failure to provide meal breaks in violation of California Labor Code section 226.7.

## C.   Inaccurate Wage Statements Claim

California Labor Code section 226 mandates that an employer "furnish each of his or her employees . . . an accurate itemized statement in writing showing (1) gross wages earned, [and] (2) total hours worked by the employee . . ." Section 226(a). Defendant's sole argument for summary judgment on Plaintiff's fourth cause of action for inaccurate payroll records in violation of California Labor Code section 226 is that the claim is "premised entirely on LLI's alleged misclassification [of Plaintiff] as exempt." (Dkt. No. 58-1 at 17.) Having denied summary judgment to Defendants on Plaintiff's claims that Plaintiff was improperly classified as exempt from California's wage and hour laws, the Court DENIES Defendant's motion for summary judgment on Plaintiff's derivative section 226 claim.

[12cv1730-GPC(JMA)]

### D.    Reimbursement Claim

California Labor Code section 2802(a) provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." "Necessary expenditures or losses" include all "reasonable costs." Cal. Lab. Code. § 2802(c). "To demonstrate that an employer has violated Section 2802, a plaintiff must show that: (1) he or she is an employee; (2) he or she incurred necessary expenses either in the discharge of his or her duties or in obeying the employer's directions; and (3) the employer failed to reimburse the plaintiff for such expenses." Desimone v. Allstate Ins. Co., 96-cv-03606 CW, 1999 WL 33226248 at *7 (N.D. Cal. Sept. 14, 1999); Gattuso v. Harte Hanks Shoppers, Inc., 42 Cal. 4th 554, 567-68 (2007). In addition, the employer "must either know or have reason to know that the employee has incurred [the] expense." Marr v. Bank of Am., 09-cv-05978 WHA, 2011 WL 845914 at *1 (N.D. Cal. Mar. 8, 2011) aff'd sub nom. Marr v. Bank of Am., NA, 506 F. App'x 661 (9th Cir. 2013).

Defendant moves for summary judgment on Plaintiff's claim for unreimbursed driving costs due to Plaintiff's failure to request reimbursement despite his knowledge of Lumber Liquidators' reimbursement policies. (Dkt. No. 58-1 at 18-19.) Defendant argues Plaintiff had "clear written policies to reimburse employees for business-related expenses," (id. at 19) (citing Dkt. No. 58-8, Davis Decl. Exs. 12, 13), and in fact submitted numerous expense reimbursement reports for the employees he managed. (Id.) (citing Dkt. No. 58-5, Meckley Decl. Ex. 1, Hammitt Depo. at 255; Dkt. No. 58-7, Waters Decl. ¶ 7).

Although Plaintiff does not dispute Defendant's proffered evidence, (Dkt. No. 74 ¶ 96, 99), Plaintiff argues: (1) the provisions of section 2802(a) are "non-waivable," (Dkt. No. 72 at 12-13) (citing Cal. Labor Code § 2804), and (2) that Plaintiff "regularly made frequent trips to the bank, yet he was never reimbursed for the mileage that he had driven for the company." (Dkt. No. 74 ¶ 98)

[12cv1730-GPC(JMA)]

(citing Dkt. No. 75, Garcia Decl. Ex. Q). The Court finds neither argument creates a dispute of material fact precluding summary judgment.

First, while the cost reimbursement requirement of section 2802(a) may not be waivable by private agreement, see Cal. Labor Code § 2804 (providing that "[a]ny contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void"), Plaintiff has introduced no evidence that Lumber Liquidators attempted to circumvent reimbursement requirements by contract. Furthermore, Defendant does not contend an express or implied contract or agreement waived Lumber Liquidators' obligation to reimburse reasonable costs. As such, the anti-waiver provisions of section 2804 do not apply to this case.

Second, while Plaintiff may have regularly incurred reimbursable expenses, the parties do not dispute that Plaintiff did not submit reimbursement requests and voluntarily chose not to do so. (Dkt. No. 74 101.[5]) Absent evidence Defendant knew or had reason to know that Plaintiff had incurred business-related expenses, Defendant is not liable for failure to reimburse Plaintiff for those expenses as a matter of law. See Stuart v. RadioShack Corp., 641 F. Supp. 2d 901, 904 (2009) ("[B]efore an employer's duty to reimburse is triggered, it must either know or have reason to know that the employee has incurred an expense."); Marr, 2011 WL 845914 at *1. Accordingly, the Court GRANTS summary judgment on Plaintiff's third cause of action for failure to reimburse incurred business-related expenses in violation of California Labor Code section 2802.

//

//

---

[5]Although Plaintiff's Separate Statement of Disputed Facts states that this fact is "Disputed," the reasons cited do not dispute either the stated facts or cited testimony. The Court may therefore consider this fact undisputed for the purposes of the present motion. See Fed. R. Civ. P. 56(e) ("If a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion.")

[12cv1730-GPC(JMA)]

### E.   Statute of Limitations and Joint Employment Theory

Defendant moves for summary judgment on Plaintiff's claims against Lumber Liquidators which accrued while Lumber Liquidators contracted with third-party retail management company Anderson Lane Associates ("ALA") to staff Store 40, on three grounds. First, Defendant argues the statute of limitations has run on Plaintiff's claims against Lumber Liquidators as a "joint employer" of ALA prior to June 2007. (Dkt. No. 58-1 at 20-22.) Second, Defendant argues Plaintiff failed to plead facts demonstrating the existence of a joint employment relationship in the present individual Complaint, thereby precluding Plaintiff's ability to do so at summary judgment. (Id. at 22) (citing L'Ggrke v. Asset Plus Corp., No. 12-596, 2013 WL 3973330 at *5 (N.D. Okla. July 31, 2013)). Third, Defendant argues the contracts between Lumber Liquidators and ALA conclusively demonstrate that Lumber Liquidators was not Plaintiff's employer prior to June 2007 as a matter of law. (Id. at 22-23.)

In opposition, Plaintiff argues California labor laws define "employer" broadly, allowing "more than one employer to be liable for unpaid wages and penalties." (Dkt. No. 72 at 23) (citing 8 Cal. Code Regs. § 11070(2)(F) (defining "Employer" as "any person . . . who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person.")). Furthermore, Plaintiff argues the statute of limitations on his pre-2007 claims should be tolled during the pendency of the Chavez putative class action brought on behalf of Store Managers and non-exempt employees of Lumber Liquidators in the United States District Court for the Northern District of California. (Dkt. No. 72 at 24-25.) According to Plaintiff, the factual bases of his individual claims are "generally the same" as those alleged in the Chavez action. (Id. at 24.)

The Court DENIES Defendant's motion for summary judgment on Plaintiff's claims against Lumber Liquidators prior to 2007. Defendant's first and second

arguments for summary judgment on Plaintiff's claims which accrued between February 2006 and June 2007 (the "Joint Employer Claims") rely on the characterization of those claims as separate and distinct from Plaintiff's post-June 2007 claims because they involve a "joint employment" theory of liability. Specifically, Defendant argues the statute of limitations has run on the Joint Employer Claims because no "joint employment" theory of liability was asserted in the Chavez action; similarly, Defendant argues Plaintiff failed to plead a "joint employment" theory of liability in the Complaint in the present action. (Dkt. No. 58-1 at 20-22.) However, courts have long interpreted the Federal Rules of Civil Procedure to require pleading of facts rather than legal theories. See Am. Timber & Trading Co. v. First Nat. Bank of Oregon, 690 F.2d 781, 786 (9th Cir. 1982) ("A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case."); see also Miller v. European Film Enters., Inc., 117 F.3d 1425 (9th Cir. 1997) (finding abuse of discretion where a district court refused to consider partnership or alter ego theories of liability at summary judgment where these theories were not asserted in the complaint). Here, Plaintiff's Complaint alleged he was employed "by Defendant Lumber Liquidators from approximately February 2005 to June 2011 as an 'exempt' employee during the relevant time period." (Dkt. No. 1 ¶ 11.) Defendant was thus on notice that Plaintiff sought to hold Lumber Liquidators liable as his employer for claims pre-dating June 2007.

Furthermore, Defendant's cited authorities do not compel a contrary result. In L'Ggrke v. Asset Plus Corp., the U.S. District Court for the Northern District of Oklahoma held that an individual could not be held a "joint employer" with the plaintiff's corporate employer under federal discrimination statutes because the plaintiff had pled no facts demonstrating the existence of a joint employment relationship to avoid the statutory bars against individual liability. 2013 WL 3973330 at *5. However, no such requirement is imposed on employees seeking to

[12cv1730-GPC(JMA)]

hold multiple employers liable under California wage and hour law. The California Supreme Court has held that an IWC wage order governing a subject industry defines the employment relationship, and that "employment" in Wage Order No. 14 embodies three alternative definitions: "(a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship." Martinez v. Combs, 49 Cal. 4th 35, 75-77 (2010). The California Court of Appeals has expanded the Martinez employment definition to interpret other IWC wage orders. Futrell v. Payday Cal., Inc., 190 Cal. App. 4th 1419, 1431 (2010) ("We reiterate: in cases involving the issue of whether an employer-employee relationship existed for purposes of the Labor Code wage statutes, we will apply the Martinez definition."). Accordingly, to assert a joint employment theory of liability at summary judgment, Plaintiff need only have pled facts sufficient to put Defendant on notice that Plaintiff sought to hold Lumber Liquidators liable as his "employer" under the Martinez definition. Plaintiff's Complaint and the Complaint in the Chavez action gave Lumber Liquidators such notice. The Court therefore DENIES Lumber Liquidators' motion for summary judgment on Plaintiff's pre-June 2007 claims on the grounds that Plaintiff failed to allege a "joint employer" theory of liability in his Complaint or that the statute of limitations has run on his "joint employer" theory as a matter of law.

Defendant's third argument for summary judgment on Plaintiff's pre-June 2007 claims is that the contracts between Lumber Liquidators and ALA conclusively demonstrate that Lumber Liquidators was not Plaintiff's employer prior to June 2007 as a matter of law. (Id. at 22-23) (citing Dkt. No. 58-3, Sims Decl. Exs. 1, 2). Defendant must therefore demonstrate that no disputed issues of material fact exist as to whether Lumber Liquidators controlled Plaintiff's wages, hours, or working conditions; suffered or permitted Plaintiff to work; or created a

[12cv1730-GPC(JMA)]

common law employment relationship with Plaintiff. <u>Martinez</u>, 49 Cal. 4th at 75-77 (2010).

Defendant has not met this burden. According to Lumber Liquidators, it contracted with ALA to provide "all labor, management, personnel, and oversight required for the operation of the San Diego store." (<u>Id.</u> at 22.) Pursuant to the contract between Lumber Liquidators and ALA between February 2006 and June 2007, Defendant claims ALA owner Richard Peck interviewed and hired Plaintiff; an ALA employee trained and supervised Plaintiff and directed his day-to-day job duties at the Lumber Liquidators store; and that Plaintiff's employment, rate of pay, payroll, benefits, and schedule were controlled by ALA. (<u>Id.</u> at 23.) Defendant further argues ALA "maintained the right to terminate Plaintiff's employment" until June 2007. (<u>Id.</u> at 24.)

Plaintiff disputes Defendant's proffered evidence, claiming Lumber Liquidators store procedures and policies controlled his day-to-day work while Plaintiff received paychecks from ALA. (Dkt. No. 74 ¶ 107) (citing Dkt. No. 75, Garcia Decl. Ex. B). Plaintiff further argues he reported directly to Lumber Liquidators Regional Manager Kevin "Sam" Sullivan after his promotion to the "Store Manager" position in August 2006. (<u>Id.</u> ¶ 105) (citing Dkt. No. 75, Garcia Decl. Ex. C at 18:11-19:1). Plaintiff testified "Anderson Lane had one function and one function only, and that was to staff the stores. Everything else as far as the day-to-day operation as far as all policies, procedures, inventory, sales, whatever, that was all Lumber Liquidators." (Dkt. No. 75, Garcia Decl. Ex. C, Hammitt Depo. at 52:7-13.)

The Court finds that the Parties' disputed facts preclude summary judgment on the question of whether Lumber Liquidators was an "employer" of Plaintiff between February 2006 and June 2007. <u>See</u> <u>Anderson</u>, 477 U.S. at 255 (1986). Accordingly, the Court DENIES Defendant's motion for summary judgment on Plaintiff's claims pre-dating June 2007.

[12cv1730-GPC(JMA)]

### III.   Evidentiary Objections

Plaintiff filed evidentiary objections to the Declarations of James Davis and Alan Waters in support of Defendant's motion for summary judgment. (Dkt. Nos. 64, 65.) In addition, Defendant filed evidentiary objections to declarations submitted by Plaintiff in opposition to Defendant's motion for summary judgment. (Dkt. No. 93.) The Court notes the Parties' objections. To the extent that the evidence is proper under the Federal Rules of Evidence, the Court considered the evidence. To the extent that the evidence is not proper, the Court did not consider them.

### IV.   Requests for Judicial Notice

The Parties filed respective requests for judicial notice. Plaintiff filed a request for judicial notice in its opposition papers seeking judicial notice of Lumber Liquidators annual reports filed pursuant to section 13 or 15(d) of the Securities Exchange Act of 1934 (also known as "Form 10-K" reports). (Dkt. No. 61.) Defendant filed a request for judicial notice with its reply seeking judicial notice of filings in the United States District Court for the Northern District of California case Chavez v. Lumber Liquidators Inc., Case Number CV-0904812(SC). (Dkt. No. 92.) Neither party has filed an objection to the requests for judicial notice.

The court may take judicial notice of a fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably be questioned." Fed. R. Evid. 201(b). A court may take judicial notice of SEC filings, see Patel v. Parnes, 253 F.R.D. 531, 544-50 (C.D. Cal. 2008), as well as filings in federal and state courts if they are relevant. U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992). The Court finds all documents appropriate under Federal Rule of Evidence 201. Accordingly, the Court GRANTS the Parties' respective requests for judicial notice. (Dkt. Nos. 61, 92.)

[12cv1730-GPC(JMA)]

1

**CONCLUSION AND ORDER**

2      Based on the foregoing, the Court hereby **GRANTS** Defendant Lumber

3   Liquidator Inc.'s motion for summary judgment on Plaintiff's third cause of action

4   for failure to reimburse employees for necessary business expenditures pursuant to

5   California Labor Code section 2802. In all other respects, the motion for summary

6   judgment is **DENIED**.

7      **IT IS SO ORDERED.**

8   DATED:  May 13, 2014

9

10   HON. GONZALO P. CURIEL
     United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[12cv1730-GPC(JMA)]